IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


**DR. JOHN D. MCCARTHY**,

           Plaintiff,

v.                                  CASE NO.:

**RICHARD V. SPENCER,**
**Secretary of the Navy,**

           Defendant.

_____/

## COMPLAINT

The Plaintiff, Doctor John Daniel McCarthy ("Dr. McCarthy"), pursuant to Title 28 United States Code Sections 2201 & 2202, and Rule 57, Federal Rules of Civil Procedure, files his Complaint against the Defendant Richard V. Spencer, in his official capacity as Secretary of the Navy ("Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1.      Dr. McCarthy seeks declaratory relief that the Defendant: (1) wrongfully withdrew Dr. McCarthy from the Armed Forces Health Professional Scholarship Program ("AFHPSP") notwithstanding Dr. McCarthy's successful graduation from medical school; (2) wrongfully separated Dr. McCarthy from the United States Navy without due process notwithstanding Dr. McCarthy's completion of six (6) years of active duty service; (3) wrongfully violated the Navy's own written discovery rule, to wit: Secretary of the Navy Instruction 1920.6C, which grants officers the right to discovery in adversarial proceedings

1

and in so doing denied Dr. McCarthy a full and fair opportunity to protest the Navy's improper actions; and (4) wrongfully attempted to recoup the full cost of the AFHPSP notwithstanding Dr. McCarthy's aforementioned wrongful removal and discharge.

2.      Dr. McCarthy also asserts a pendant state law claim seeking judgment against Defendant for damages as a result of Defendant's violation of the Florida Consumer Collection Practices Act, Florida Statutes §559.55 et seq. ("FCCPA"), specifically §559.72, Florida Statutes.

## PARTIES

3.      Dr. McCarthy is a citizen of Florida and long-time Jacksonville resident.

4.      Upon graduation from Fletcher High School in Neptune Beach, Florida, Dr. McCarthy attended the United States Naval Academy ("USNA").

5.      After graduation from the USNA and upon receiving his commission in the Armed Forces, Dr. McCarthy honorably served over six (6) years on active duty successfully completing tours of duty around the globe.

6.      Dr. McCarthy subsequently entered the AFHPSP to fulfill his dream of continuing his naval service as a military doctor.

7.      After successfully completing all medical school and military requirements mandated by the AFHPSP, Dr. McCarthy commenced a residency program at Millcreek Community Hospital in Erie, Pennsylvania, where he currently resides with his family.

8.      Defendant is the Secretary of the Navy and is responsible for the naval service branch of the United States Armed Forces.

9.     Defendant's military doctor pipeline program, AFHPSP, provides participants with funds for medical school in exchange for subsequent active duty service as Navy medical professionals.

## JURISDICTION & VENUE

10.     This Court possesses jurisdiction over this action pursuant to Title 28 United States Code Sections 2201 & 2202, and Rule 57, Federal Rules of Civil Procedure, as this action is a demand for a declaratory judgment.

11.     Specifically, an actual justiciable controversy between Dr. McCarthy and Defendant exists within the meaning of Title 28 United State Code Section 2201 regarding whether Dr. McCarthy was: (1) wrongfully withdrawn from the AFHPSP; (2) wrongfully discharged from the United States Navy; (3) wrongfully denied Dr. McCarthy his right to written discovery; and (4) whether Defendant's attempt to recoup the costs of the AFHSP from Dr. McCarthy is improper.

12.     This Court also possesses jurisdiction over this action pursuant to Article III of the United States Constitution, in that this is a case against the United States. The Court possesses jurisdiction over Dr. McCarthy's state law cause of action pursuant to 28 U.S.C. § 1367 inasmuch as Count V arises from the same set of operative facts as Dr. McCarthy's other claims and all of the claims are a part of the same case or controversy.

13.     Venue is proper in this district in accordance with Title 28 United States Code Section 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

14.     Specifically, Dr. McCarthy executed the Armed Forces Health Profession Scholarship Program Services Agreement (the "AFHPSP Services Agreement") at the Naval Recruiting Depot in Jacksonville, Florida in 2013.  See Email from Naval Recruiting Depot Jacksonville for AFHPSP Services Agreement Signing dated March 11, 2013, attached hereto as **Exhibit A**.

15.     Dr. McCarthy retained the services of Abel Bean Law P.A. ("Abel Bean Law") to represent Dr. McCarthy in this action and agreed to pay Abel Bean Law's reasonable fees and costs for its services.

16.     Abel Bean Law submitted a petition to the United States Navy Board for the Correction of Military Records ("BCNR") on behalf of Dr. McCarthy on September 13, 2018, in an effort to exhaust administrative remedies with respect to the AFHPSP Services Agreement dispute.

## STATEMENT OF THE CASE

17.     This is an action by a wrongfully discharged United States Navy ("Navy") officer alleging Defendant's violations of both: (a) a contract between Dr. McCarthy and Defendant; as well as (b) Title 10 United States Code Section 12683, and seeking declaratory relief that Defendant: (1) wrongfully withdrew Dr. McCarthy from the AFHPSP; (2) wrongfully separated Dr. McCarthy from the United States Navy; (3) wrongfully denied Dr. McCarthy his right to discovery; and (4) improperly attempted to recoup the cost of the medical school from Dr. McCarthy.

18.     Dr. McCarthy graduated from the USNA in 2005 (the "Naval Academy") and served over six (6) years on active duty before being honorably discharged from the Navy on

May 31, 2011.  See Certificate of Discharge from Active Duty (DD 214), attached hereto as **Exhibit B**.

19.     On March 12, 2013, Dr. McCarthy elected to continue his naval service when he entered a military doctor pipeline program known as the AFHPSP, which provides funds for medical school in exchange for subsequent active duty service as a Navy doctor. See AFHPSP Services Agreement, attached hereto as **Exhibit C**.

20.     Dr. McCarthy successfully completed all medical school and military requirements mandated by the AFHPSP Services Agreement, and he attained a medical degree in good standing and on time with his entering class on June 4, 2017.  See LECOM Doctoral Degree, attached hereto as **Exhibit D**.

21.     In spite of Dr. McCarthy's notable academic performance and compliance with the AFHPSP Services Agreement, Defendant caused to be sent an electronic communication to Dr. McCarthy, on June 2, 2017 -- after Dr. McCarthy had successfully completed all medical academic requirements -- stating words to the effect that Dr. McCarthy was separated from the Navy.

22.     After declining the medical service of Dr. McCarthy, a medical school graduate and licensed doctor with significant Navy experience eager to continue his Navy career as a medical officer, Defendant demanded recoupment of medical school costs expended under the AFHPSP Services Agreement.   See Exhibit D and Medical Training License, State of Pennsylvania, attached hereto as **Exhibit E**.

23.     Specifically, the Defense Finance and Accounting Service ("DFAS"), which provides payment services on behalf of Defendant, sent Dr. McCarthy a letter on August 28,

2018 demanding $251,194.41 in lump sum payment within thirty (30) days, or the initiation of regular installment payments with interest, or actual service as a medical doctor.  See Defense Finance and Accounting Service Debt Statement, attached hereto as **Exhibit F**.

24.    Dr. McCarthy presents justiciable issues as to whether Defendant breached the AFHPSP Services Agreement when it discharged Dr. McCarthy from the AFHPSP and involuntarily separated him from the Navy.  Dr. McCarthy is therefore also in doubt as to whether he owes $251,194.41 to Defendant, the cost of his medical school education.

25.    There is a bona fide, actual and present need for a declaration by this Court and a determination of the rights of Dr. McCarthy and Defendant under the AFHPSP Services Agreement.  Such a determination by this Court of the parties' respective rights will terminate their controversy and remove any uncertainties regarding the propriety and validity of Defendant's immediate demand for recoupment of the substantial cost of Dr. McCarthy's medical school education.

26.    In addition, Defendant continues to contact Dr. McCarthy even though Abel Bean Law has made Defendant aware that it represents Dr. McCarthy, in violation of the FCCPA.

27.    Dr. McCarthy respectfully requests that this Court enter a declaratory judgment finding that: Defendant: (1) wrongfully withdrew Dr. McCarthy from the AFHPSP; (2) wrongfully separated Dr. McCarthy from the Navy; (3) wrongfully denied Dr. McCarthy's right to discovery; and (4) wrongfully attempted to recoup the cost of AFHPSP from Dr. McCarthy.

28.     Furthermore, Dr. McCarthy respectfully requests that this Court enter a judgment against Defendant for: (1) actual and statutory damages as a result of Defendant's violation of Section 559.72, Florida Statutes, in accordance with Section 559.77, Florida Statutes; (2) reasonable attorneys' fees and costs incurred as a result of this action in accordance with Section 559.77, Florida Statutes; and (3) any such other and further relief as this Court deems just and proper.

## FACTUAL BACKGROUND

### Dr. McCarthy's Background & Military Service

29.     Dr. McCarthy grew up in a Navy legacy family (his grandfather was a Navy WWII veteran; his father is a 1977 graduate of the United States Naval Academy and career Navy officer; one uncle is a 1980 graduate of the United States Naval Academy and career Navy officer; and another uncle was a naval aviator and former Commanding Officer of Naval Station Mayport), and he lived on Navy bases and communities during his childhood.

30.     Dr. McCarthy spent his early years at Naval Station Subic Bay, Republic of the Philippines, while his father served at this overseas post.

31.     Dr. McCarthy spent his grade school years in Washington D.C. while his father served in the Pentagon.

32.     Dr. McCarthy spent his high school years in Jacksonville Beach while his father served at Naval Station Mayport.

33.     Dr. McCarthy participated in NJROTC while in high school.

34.     Dr. McCarthy received a Presidential service academy nomination and chose to attend the Naval Academy to continue his family service as a career naval officer.

7

35.     Dr. McCarthy was a plebe at the Naval Academy when terrorists attacked the United States of America on September 11, 2001, and this event further influenced his desire to become a career military officer.

36.     Dr. McCarthy majored in English and minored in Spanish at the Naval Academy while earning a Bachelor of Science Degree in the Class of 2005.

37.     Dr. McCarthy's academic and professional performance at the Naval Academy was exemplary.

38.     Dr. McCarthy made the honor roll three (3) semesters, played varsity baseball during his first two (2) years, and never received a demerit for improper conduct at the Naval Academy.

39.     After graduation from the Naval Academy, Dr. McCarthy served his first tour (2005 - 2007) as a Navy Surface Warfare Officer on USS GETTYSBURG (CG 64) homeported at Naval Station Mayport.  See LTJG McCarthy Fitness Report dated November 4, 2007, attached hereto as Exhibit G; LTJG McCarthy Fitness Report dated February 29, 2008, attached hereto as Exhibit H.

40.     Dr. McCarthy was ranked the Number One Division Officer and No. 1 of fourteen (14) First Tour Division Officers on USS GETTYSBURG by Commanding Officers who subsequently became Admirals.  See Exhibits G, H.

41.     RADM Brown, Dr. McCarthy's reporting senior, wrote that Lieutenant McCarthy "extended to complete an Arabian Gulf Deployment and was my best OOD in the Gulf."  See Exhibit H.

8

42.     Dr. McCarthy's second sea tour (2007 - 2009) was on USS MCCAMPBELL (DDG 85), homeported in Yokosuka, Japan.  See LTJG McCarthy Fitness Report dated June 9, 2009, attached hereto as **Exhibit I**.

43.     Dr. McCarthy was ranked No. 1 of three (3) highly talented Second Tour Division Officers on USS MCCAMPBELL.  See Exhibit I.

44.     Dr. McCarthy's Commanding Officer stated in his fitness report, "LT McCarthy is a talented, motivated officer with boundless potential in any community."  See Exhibit I.

45.     Dr. McCarthy's third operational tour (2009 - 2011) was as Flag Aide to Commander Fourth Fleet, homeported at Naval Station Mayport. See LT McCarthy Fitness Report dated May 6, 2011, attached hereto as **Exhibit J**.

46.     Dr. McCarthy was ranked No. 1 of seventeen (17) Lieutenants on the Commander Fourth Fleet staff. See Exhibit J.

47.     RADM Guillory, the Fleet Commander, wrote "LT McCarthy has my strongest recommendation for early selection to LCDR and command at sea." See Exhibit J.

48.     Dr. McCarthy's active duty service included hazardous duty and prolonged deployments in combat theaters, overseas homeport assignment, bilingual language skills, and travel to twenty-six (26) countries.

49.     During his naval service Dr. McCarthy received numerous personal decorations and unit awards, including: Navy Commendation Medal; three (3) Navy Achievement Medals; Navy Meritorious Unit Commendation; Coast Guard Meritorious Unit Commendation; Global War on Terror Expeditionary Medal; National Defense Service Medal; Global War on

Terrorism Service Medal; three (3) Sea Service Ribbons; and Expert Marksmanship Rifle and Pistol Medal.

50.     Dr. McCarthy left a promising surface warfare career to pursue medical school and follow-on service as a Navy doctor.  See Exhibits G, H, I, J.

51.     Dr. McCarthy departed the Navy in 2011 in pay grade O-3 (Lieutenant) with six (6) years and four (4) days of active service, fulfilling his five (5) years of obligated service for service academy attendance.  See Exhibit B.

**Dr. McCarthy's Decision to Serve as a Military Doctor**

52.     From 2011-2013, Dr. McCarthy completed post-baccalaureate pre-medical school courses necessary to apply for medical school, took the medical college admission test, gained medical and clinical experience and completed medical school applications.

53.     Dr. McCarthy was accepted by three (3) medical schools.  See Acceptance Letter to Lake Erie College of Osteopathic Medicine, attached hereto as **Exhibit K;** Acceptance Letter to Philadelphia College of Osteopathic Medicine, attached hereto as **Exhibit L;** Acceptance Letter to Campbell University School of Osteopathic Medicine, attached hereto as **Exhibit M**.

54.     Dr. McCarthy could have applied earned GI Bill benefits to defray medical school tuition costs and pursue a civilian medical career.  See GI Bill Entitlement Information as of December 1, 2017, attached hereto as **Exhibit N**.

55.     Dr. McCarthy did significant research regarding the ability to combine his prior service as a surface warfare officer with possible future service as a medical officer in the Navy

for military retirement purposes. <u>See</u> Email to Navy Recruiter Regarding Career Planning dated February 19, 2013, attached hereto as **Exhibit O**.

56.     Dr. McCarthy sought and received confirmation from an officer recruiter at Naval Recruit District Jacksonville that he would get "straight credit for [his] 6 yrs AD [active duty] toward retirement."  <u>See</u> Exhibit O.

57.     Dr. McCarthy chose to accept a lengthy obligated service commitment in the Navy and reduction to the rank of Ensign during medical school as required by the AFHPSP provisions (promotion to Lieutenant occurs upon graduation), in exchange for scholarship benefits because of his desire to be a career naval officer and serve the medical needs of sailors and their families, along with his intent to aggregate prior naval service for retirement purposes.  <u>See</u> Ensign McCarthy Rebuttal Statement dated March 29, 2017, attached hereto as **Exhibit P**.

### AFHPSP Services Agreement Terms

58.      In 2013, Dr. McCarthy signed the AFHPSP Services Agreement (the "Services Agreement") at the Naval Recruiting Depot in Jacksonville, Florida.  <u>See</u> Services Agreement, Exhibit C.

59.     The primary purpose of the AFHPSP is to meet national defense needs for trained medical personnel by providing students with financial assistance in exchange for an enforceable commitment to serve on active duty as a medical professionals for a specified period of time.  <u>See</u> Exhibit C, Preamble.

60.     Pursuant to the Services Agreement, Dr. McCarthy received four (4) years of scholarship benefit in exchange for a service commitment of eight (8) years.  <u>See</u> Exhibit C.

61.     The Services Agreement is a seven-page standard contract extended to all medical students entering into an agreement to serve in the Armed Forces Medical Corps following graduation. See Exhibit C.

62.     Defendant prepared the AFHPSP Services Agreement and drafted all text contained within this contract. See Exhibit C.

63.     Medical students are free to select any accredited medical school to which they are offered admission, and the armed forces plays no role in supervising the scholastic requirements and policies of the individual medical schools which prospective military doctors attend.  See Exhibit C.

64.     The AFHPSP Services Agreement, read as a whole, explicitly and implicitly establishes the medical school as the responsible academic authority for assessing academic progression through medical school, along with whether a medical student meets the requirements for a medical degree from that medical school.  See Exhibit C.

65.     Paragraph No. 1 of the AFHPSP Services Agreement lists six (6) requirements for Dr. McCarthy.  See Exhibit C, ¶ 1.

66.     Only one of these six (6) requirements concerns academic performance in medical school, specifically requiring Dr. McCarthy to "[r]emain an active member of the AFHPSP while completing all phases of my professional education until I have satisfied all requirements for that health professional degree."  See Exhibit C, ¶ 1(d).

67.     The Services Agreement authorizes Defendant to suspend a student from the program for the following three (3) reasons: (1) if a student is dropped by the medical school due to deficiencies in conduct or studies; (2) if, for other reasons, a student must repeat an

academic period or discontinue his professional education; or (3) if a student refuses to comply with or fails to meet the applicable standards of the Navy (including weight, physical fitness and medical qualification).  See Exhibit C, ¶ 16.

68.    Paragraph No. 12 of the AFHPSP Services Agreement, which deals specifically with performance on national written and practical exams, states:

> Part II of the examination must be taken and passed after completing the third-year academic curriculum year but before 15 September of the fourth academic curriculum year and results must be provided to the AFHPSP Manager by 15 October of the fourth-year.  Program participants will have their entitlements suspended for first time failure to pass Part I or II of the USMLE or COMLEX and be placed in an academic LWOP status.  A second time failure of the examination or clinical skills examination may result in loss of scholarship eligibility.

See Exhibit C, ¶12.

69.    Paragraph No. 12 further states that participants must complete all requirements for medical licensure at the first available date.  See Exhibit C, ¶12.

70.    Accordingly, the AFHPSP Services Agreement required Dr. McCarthy to do two things to meet the academic requirements of the AFHPSP: (1) remain an active member of the AFHPSP; and (2) complete all requirements for a medical degree at the first available date.  See Exhibit C, ¶¶ 1 & 12.

**Dr. McCarthy's Matriculation at LECOM**

71.    Dr. McCarthy matriculated at Lake Erie College of Osteopathic Medicine ("LECOM") on July 29, 2013.

72.    Dr. McCarthy chose to attend LECOM because it produces a significant number of military doctors each year (typically thirty (30) or more) and has a faculty sprinkled with distinguished military backgrounds, including the LECOM Clinical Dean - COL Anthony

Ferretti, MC, USA (Ret.), and COL Warner Farr, MC, USA (Ret.) chief editor of the definitive textbook *Special Operations Forces Medical Handbook*.

73.     The Navy actively recruits medical students at LECOM, the largest medical school in the United States, and during Dr. McCarthy's first weeks at LECOM, the Navy informed his class that eighty-five (85) additional scholarships were available for LECOM students wishing to serve as Navy doctors after graduation.  See LECOM Financial Aid Email Announcing 85 AFHPSP Scholarships dated August 7, 2013, attached hereto as **Exhibit Q**.

### LECOM Requirements

74.     LECOM has established a very detailed listing of its requirements for medical school attendance, mandatory course work and clinical performance, and criteria for the attainment of a medical degree.  See LECOM Academic Catalog and Student Handbook, "Academic Policies and Procedures," attached hereto as **Exhibit R.**

75.     Performance during medical school is critically measured and evaluated every semester per the Academic Catalog and Student Handbook.  See **Exhibit R.**

76.     The Student Promotion and Graduation Committee at LECOM evaluates individual scholastic and clinical issues that arise during the course of medical school and makes recommendations on student progression and graduation to the Dean for final decision. See **Exhibit R.**

77.     The range of responses by LECOM for sub-standard performance on medical school courses, clinical rotations, or national comprehensive examinations range from remedial action to probation, repeat of academic periods, temporary suspension, and being dropped from the medical school entirely.  See **Exhibit R.**

78.     Evaluation by the Student Promotion and Graduation Committee at LECOM allows individual factors impacting each student to be considered and the student's cumulative performance on all medical school evolutions to be fully weighed.  See Exhibit R.

79.     Per LECOM guidelines, failure to pass the objective written and numerically scored national comprehensive medical exams taken in the third and fourth year of medical school results in suspension from the medical program until the respective test is passed.  See Exhibit R.

80.     Per LECOM guidelines, failure to pass COMLEX Level 2 Performance Evaluation, the lone subjective practical exam taken in the final year of medical school, may or may not lead to academic consequences or progression interruption, and students may be permitted to retake the practical test as many as three times at the discretion of the Student Promotion and Graduation Committee and LECOM Dean.  See Exhibit R.

81.     Defendant is not included in the LECOM academic performance review process, does not make input to the Dean regarding AFHPSP students, and is not involved in decisions concerning academic progression or medical degree attainment for military students at LECOM. See Exhibit R.

82.     The LECOM Student Promotion and Graduation Committee and LECOM Dean make dozens of academic progression recommendations and decisions on Navy medical students every year.

83.     The fact that Defendant utilizes LECOM for the training of dozens of Navy doctors annually, and actively recruits students at LECOM for future Navy service as health

professionals, suggests that the Navy understands, adopts and respects the policies utilized at LECOM to assess academic progression and degree attainment.

**Dr. McCarthy's Academic Performance at LECOM**

84.    Dr. McCarthy completed the first year of medical school satisfactorily and was promoted by the LECOM academic advisory group to second year studies.

85.    Dr. McCarthy completed the second year of medical school satisfactorily and was promoted by the LECOM academic advisory group to third year studies.

86.    During the third year of medical school, Dr. McCarthy completed clinical training periods in different specialties of medicine under the watchful eye of the following practicing physicians: Dr. Stephen Coppa, Dr. Martha Sheils, Dr. Kinga Porter, Dr. Steven Silverman, Dr. John Rioux, Dr. Robert Weaver, Dr. Werther Marciales, Dr. Marco Rabines, Dr. Michelle Johnson, Dr. Aaron Sudbury, Dr. Nancy Rockstroh, and CDR Brian Arnold. *See* Request for Remission of Indebtedness dated June 29, 2017, attached hereto as **Exhibit S**, ¶16(A)(3).

87.    Each of these physicians submitted grades and written evaluations which became part of Dr. McCarthy's performance record.

88.    During the third year of medical school, Dr. McCarthy successfully completed seven (7) required national written tests on his initial attempt: Comprehensive Osteopathic Medical Licensing Examination (COMLEX) Level 1, and National Board of Medical Examiners Subject Examinations in Family Medicine, Internal Medicine, Surgery, Pediatrics, Obstetrics and Gynecology, and Psychiatry.

16

89.     Dr. McCarthy completed the third year of medical school satisfactorily and was promoted by the LECOM academic advisory group to fourth year studies.

90.     During the fourth year of medical school, Dr. McCarthy completed clinical training periods under the supervision of the following physicians: Dr. John Moor, Dr. Ronald Cirillo, Dr. Donald Snyder, Dr. David Law, Dr. Stephen Coppa, Dr. Martha Sheils, Dr. Robert Weaver, CDR Brian King, and CDR Kristian Sanchack.  See Exhibit S, ¶16(A)(3).

91.     Each of these doctors submitted grades and written evaluations which became part of Dr. McCarthy's performance record.

92.     One highly regarded civilian orthopedic surgeon in Sarasota evaluated Dr. McCarthy's fourth year clinical rotation and described Dr. McCarthy as "...excellent, maybe the finest student from any school."  See Dean Ferretti email dated October 25, 2016, attached hereto as Exhibit T.

### COMLEX Level 2 Performance Evaluation

93.     During the fourth year of medical school Dr. McCarthy completed two (2) national examinations: COMLEX Level 2 Cognitive Examination (CE), which is a written examination and numerically scored, and COMLEX Level 2 Performance Evaluation (PE) ("COMLEX 2 PE"), which is a practical examination scored as pass/fail.

94.     The National Board of Osteopathic Medical Examiners (NBOME), which administers the COMLEX 2 PE, allows up to six (6) attempts to pass the test.  See NBOME Post-COMLEX 2 PE FAQ Information Bulletin of March 2017, attached hereto as Exhibit U.

17

95.     LECOM permits up to three (3) attempts to pass the COMLEX 2 PE for students who are otherwise doing well and progressing through medical school normally.  See Exhibit R.

96.     As with all academic performance matters at any medical school, the authority to determine the progression of a medical student, and whether a student will be allowed to retake a national exam, is properly and exclusively vested in the medical school.  *See* Exhibits C, R.

### Dr. McCarthy's Performance on COMLEX 2 PE

97.     After failing the COMLEX 2 PE the first two (2) times he sat for the exam, Dr. McCarthy scheduled a retake on February 1, 2017.

98.     Dr. McCarthy was among dozens of physicians in his LECOM class to experience difficulty with the PE exam.  See Dean Coty email dated September 20, 2016, attached hereto as **Exhibit V.**

99.     The authorizations for PE exam retakes by Dr. McCarthy (approved by Dean Ferretti after conducting personal meetings with Dr. McCarthy) were consistent with LECOM academic policy and carefully considered by the Student Promotion and Graduation Committee.  See Exhibit R.

100.     LECOM Dean Ferretti wrote the Navy to inform them that he was confident Dr. McCarthy would pass the PE exam on retake, and that he was certain that Dr. McCarthy would graduate with his class ready to serve effectively as a military doctor.  See Dean Ferretti Letter attached hereto as **Exhibit W.**

101.    Dean Ferretti, a career military doctor and Clinical Dean at the largest medical school in America, with daily interaction and personal knowledge of Dr. McCarthy's performance record at medical school for more than three (3) years, was the ideal medical professional to render this judgment.

102.    Dean Ferretti has been entrusted by the military to make similar judgments on medical school progression, and the academic and clinical performance of military doctors, both as a Dean and as an Army orthopedic surgeon.

103.    Dr. McCarthy sat for the COMLEX 2 PE on February 1, 2017.

104.    While waiting for the score on his third attempt, Defendant notified Dr. McCarthy that Defendant was considering his honorable discharge from the Navy Reserve as a result of his failure to pass the COMPLEX 2 PE.  See Naval Reserve Status Letter dated February 9, 2017, attached hereto as **Exhibit X**.  Defendant also informed Dr. McCarthy that he could submit a rebuttal no later than March 10, 2017.  *See* Exhibit X.

105.    On March 6, 2017, Dr. McCarthy submitted a request for an extension on his rebuttal as he was awaiting the results of his retake of the COMLEX 2 PE and wanted Defendant to have this information before making a decision on his Navy Reserve status.  See Rebuttal Statement Extension Request dated March 6, 2017, attached hereto as **Exhibit Y**.

106.    Defendant granted Dr. McCarthy an extension to submit his rebuttal request until April 7, 2017.  See Exhibit Y.

107.    Dr. McCarthy was notified that he passed the COMLEX 2 PE on retake and he submitted his rebuttal on March 29, 2017 containing this information and requesting to be

retained in the AFHPSP and a commission in the Medical Corps.  See Rebuttal Statement dated March 29, 2017, attached hereto as **Exhibit Z.**

108.    In his Rebuttal Statement, Dr. McCarthy provided an explanation for his medical school class' historically low pass rate – the lack of continuity created by faculty turnover.  Dr. McCarthy explained the measures he took to adequately prepare for the re-take, both those required by the school and those undertaken on his own volition.

109.    In his Rebuttal Statement, Dr. McCarthy highlighted his achievements in medical school and prior Navy service and emphasized his desire to serve his country as a Naval officer and Navy doctor.

110.    Dr. McCarthy continued the uninterrupted progression to earning his medical degree on time and in good standing with his classmates.

### Summary of Medical School Performance

111.    In total Dr. McCarthy successfully completed nine (9) national board exams required for graduation at LECOM (which total thirty-seven (37) hours of actual testing, and thousands of hours of pre-test preparation), and he passed all medical courses taken at LECOM.  See **Exhibit D.**

112.    Dr. McCarthy completed twenty (20) civilian medicine rotations and was closely observed by eighteen (18) civilian and military physicians.

113.    Dr. McCarthy completed three (3) Navy medicine rotations during his four (4) years at medical school, and he was closely observed by dozens of Navy doctors and resident physicians while performing these rotations.

114.    Dr. McCarthy's military medicine rotations were performed at Naval Air Station Jacksonville, Florida and Naval Medical Center Portsmouth, Virginia, the two (2) largest Navy medical facilities on the east coast.

115.    During these military medicine clinical performance periods, Dr. McCarthy rotated with different Navy doctors and resident physicians each day, allowing widespread observation and evaluation of his performance.

116.    After thorough observation of Dr. McCarthy's medical skills and performance and his military bearing and character, the Navy selected him in December 2017, the middle of his senior year, for his first choice for internship training - Internal Medicine at Naval Medical Center Portsmouth.  See "Welcome to the Internal Medicine Program at NMCP" Email dated December 16, 2016, attached hereto as Exhibit aa.

117.    During his fourth year of medical school LECOM Dean Ferretti informed the Navy that Dr. McCarthy "will remain on time for graduation with his class and be available for postgraduate medicine programs."  See Exhibit W.

118.    Dr. McCarthy's grades during his last two (2) years of medical school consisted of 16 A's, 7 B's, and 1 C.  See Exhibit bb, ¶16(A)(3))

119.    Dr. McCarthy was never suspended or delayed in his academic progression during his four (4) years of training at LECOM, and at all times the academic review committee and Dean Ferretti expected him to graduate with his class.  See Exhibit W.

**First Notification of Discharge from Navy Reserve**

120.    By the end of May 2017, Dr. McCarthy had successfully completed all substantive requirements for a medical degree from LECOM while an active member of the

21

AFHPSP, and he was awaiting Navy orders to residency training (prior to that time, Dr. McCarthy had received several messages which indicated his orders to active duty would be available in April 2017 and that he was slated for promotion to Lieutenant upon graduation from LECOM).  See Dr. John Kalata Letter dated August 15, 2018, attached hereto as **Exhibit cc**; Bureau of Medicine message dated February 6, 2017 regarding Important Navy Graduation Information attached hereto as **Exhibit dd**; Promotion from ENS to LT Email dated February 15, 2017, attached hereto as **Exhibit ee**; Intern Orientation Calendar Email dated April 4, 2017, attached hereto as **Exhibit ff**.

121.    On May 31, 2017 (four (4) days before LECOM graduation) the Tampa Bay Newswire published a media story reporting LECOM graduating class of 2017 included Navy Lt. John McCarthy.  See Tampa Bay Newswire Article dated May 31, 2017, attached hereto as **Exhibit gg**.

122.    On June 2, 2017 Dr. McCarthy received an email from Naval Medical Center Portsmouth, Virginia suggesting he would be assigned to that command upon graduation. See Naval Medical Center Portsmouth Email dated June 2, 2017, attached hereto as **Exhibit hh**.

123.    Later that day (two (2) days before the graduation ceremony), and after completion of his academic requirements and repeated inquiries to Defendant from Dr. McCarthy in April and May 2017 regarding his future Navy assignment, Dr. McCarthy received a terse email from a civilian desk officer in the Navy Personnel office stating that his rebuttal had been disapproved and that Defendant would be discharging him from the Navy Reserve effective that day.  See **Exhibit ii**,  E-mail dated June 2, 2017 from Jill. M. Cord and **Exhibit jj**, NPC, Pers-911 Letter dated June 2, 2017 from D.K. Ponds.

124.    Defendant's email failed to acknowledge that Dr. McCarthy was two (2) days away from receiving a medical degree while an active member of the AFHPSP in full satisfaction of the AFHPSP Services Agreement.

125.    Defendant's email failed to explain the grounds for Dr. McCarthy's involuntary separation and failed to acknowledge that Dr. McCarthy had completed six (6) years of prior active duty service deserving of due process rights prior to involuntary separation from the Navy.  **See Exhibits ii. jj.**;  Title 10 U.S.C. § 12683.

### LECOM Graduation

126.    The LECOM graduating program for the Class of 2017 reported that John Daniel McCarthy would receive a medical degree and serve as a doctor in the Navy.  See LECOM Bradenton Graduation Program of June 4, 2017, attached hereto as **Exhibit kk**.

127.    Dr. McCarthy completed all medical school and military requirements mandated by the AFHPSP Services Agreement, and he received his medical degree in good standing and on time with his entering class at the LECOM graduation ceremony on June 4, 2017. See Exhibits D, kk.

128.    Dr. McCarthy was one of seventeen (17) graduating members of his class attending LECOM Bradenton campus under the AFHPSP, representing all branches of the Department of Defense, and he was recognized accordingly during a special tribute to the armed forces. See Exhibit kk.

### Discharge from the Navy Reserve

129.    On June 8, 2017, four (4) days after graduation, Dr. McCarthy received an official written correspondence from Defendant stating that Defendant had reviewed

Dr. McCarthy's rebuttal and authorized his separation from the Navy Reserve.  Accordingly, Defendant honorably discharged Dr. McCarthy from the Navy Reserve effective June 2, 2017. See Exhibit jj.

130.    Defendant's correspondence noted that the deadline for submission of a remission of debt request was July 7, 2017.  See Exhibit jj.

131.    Defendant's correspondence failed to acknowledge that Dr. McCarthy attained a medical degree while an active member of the AFHPSP, and graduated as a qualified medical doctor, in full satisfaction of the AFHPSP Services Agreement.  See Exhibits C, D.

132.    Defendant's correspondence failed to explain the grounds for Dr. McCarthy's involuntary separation and failed to acknowledge that Dr. McCarthy had six (6) years of prior active duty service deserving of due process rights prior to involuntary separation from the Navy.  See Exhibits ii, jj; Title 10 U.S.C. § 12683.

133.    Defendant's own written instruction, Secretary of the Navy Instruction 1920.6C, provides an officer that is in the process of being discharged, with the right to discovery.

134.    The Navy's discovery rule is designed to provide the affected officer with the opportunity to properly defend him or herself.

135.    Dr. McCarthy requested discovery pursuant to SECNAVINSTR 1920.6C.

136.    Defendant never provided discovery to Dr. McCarthy.

**Navy's Demand for Recoupment of Medical School Costs**

137.    On June 29, 2017, Dr. McCarthy submitted a detailed Remission of Indebtedness Request to Defendant, which provided a full chronology of events in question

and challenged the legality of Defendant's actions.  See Request for Remission of Indebtedness dated June 29, 2017, attached hereto as Exhibit S.

138.    On July 6, 2018, more than a year after Dr. McCarthy submitted his Request for Remission of Indebtedness, Dr. McCarthy received an official correspondence from Defendant denying Dr. McCarthy's request to cancel recoupment of educational funds expended on his behalf while in the AFHPSP.  See Navy Disapproval of Remission Request Letter dated July 6, 2018, attached hereto as **Exhibit ll**.

139.    Defendant explained that Dr. McCarthy had been separated for academic reasons that were not due to his misconduct.  See Exhibit ll.  Defendant specifically stated, "due to academic issues, you were unable to perform the agreed-upon active duty service.  As a result, repayment is required."  See Exhibit ll.

140.    Defendant noted that a recoupment demand for $251,194.41 would follow and offered an alternative to loan repayment – specifically, for Dr. McCarthy to complete his obligation to Defendant as a Navy civilian physician at one of its facilities once he graduated from medical school and was licensed.  See Exhibit ll.

141.    Defendant issued a debt statement on August 28, 2018 that demands full payment from Dr. McCarthy in the amount of $251,194.41.  Defendant advised Dr. McCarthy that, alternatively, he can submit the first installment of $7,085.72 by September 28, 2018, which includes interest, and begin making monthly payments thereafter for the next ten years. See Exhibit F.

**Dr. McCarthy's Performance in Residency Program**

142.     Defendant's action to involuntarily separate Dr. McCarthy from the Navy two (2) days before he successfully graduated from a demanding four-year course of study in medical school had significant adverse financial, personal and professional consequences.

143.     The timing of Defendant's action severely prejudiced Dr. McCarthy's opportunities for Osteopathic Residency training programs -- a critical step in the progression of an osteopathic doctor.

144.     As a result of Defendant's action to involuntarily separate Dr. McCarthy from the Navy, Dr. McCarthy was unable to attend the internal medicine residency program at Portsmouth Naval Medical Center (which he pursued and for which he was selected), leaving him with few alternative civilian residency options. See Exhibit aa.

145.     Fortunately, the medical faculty at LECOM thought so highly of Dr. McCarthy that they immediately offered him a family medicine slot at their flagship hospital, Millcreek Community Hospital in Erie, Pennsylvania.

146.     Dr. McCarthy had to hastily hire a realtor to place his house on the market, relocate his family to distant Erie, Pennsylvania, and start residency training at a hospital and community he had never visited.

147.     Dr. McCarthy lost significant wages over the residency period compared to the military pay he expected to receive.

148.     Despite Dr. McCarthy's short-notice transition to a residency program in Pennsylvania he was unfamiliar with, and the prejudicial impact of the Navy publicly labeling Dr. McCarthy as deficient in studies at medical school, he has excelled in residency training at Millcreek Community Hospital.

149.    Six (6) weeks after starting this civilian residency training, Dr McCarthy was selected as the Chief Intern Physician from among the twenty (20) doctors starting residency programs at Millcreek Community Hospital in 2017.   See Email Announcement of Dr. McCarthy as Chief Intern Physician dated August 17, 2017, attached hereto as **Exhibit mm**.

150.    Dr. McCarthy also enrolled in a Master's Degree Program in Health Sciences and made straight As in all masters level courses. See Masters in Health Services Administration Grade Report, attached hereto as **Exhibit nn**.

151.    Dr. McCarthy sat for the third and final national licensure examination (COMLEX 3) and passed on first sitting with the impressive score of 581 (passing score 350) which is above the mean for all osteopathic doctors in residency programs around the nation. See COMLEX Level 3 Score Report, attached hereto as **Exhibit oo**.

152.    Dr. McCarthy also sat for the Family Medicine In-Service Examination, taken by all Osteopathic Family Medicine residents in the country, and scored in the top third of his peers.  See ACOFP In-Service Examination 2017 Score Report, attached hereto as **Exhibit pp**.

153.    Dr. McCarthy was selected the Outstanding Resident for the Quarter in September 2018 by vote of the Family Medicine Faculty at Millcreek Community Hospital. See Family Medicine Resident of the Quarter Certificate dated September 6, 2018, attached hereto as **Exhibit qq**.

154.    Dr. John Kalata, the Director of Medical Education and Family Medicine Residency Director at LECOM Health-Millcreek Community Hospital reports that Dr. McCarthy is an exceptional resident and fine physician, who is "ahead of the curve"

relative to his peer group of doctors. See Dr. John Kalata Letter dated August 15, 2018, attached hereto as Exhibit cc.

155.     Dr. McCarthy's performance in residency training following graduation from medical school reconfirms that he was not academically deficient in medical school.

### Dr. McCarthy Fully Complied With AFHPSP Services Agreement

156.     Dr. McCarthy met all of the requirements contained in the AFHPSP Services Agreement.

157.     Dr. McCarthy earned his diploma from LECOM on June 4, 2017, satisfying the AFHPSP Services Agreement requirement to complete all phases of his professional education.  See Exhibit D.

158.     Furthermore, Dr. McCarthy graduated on time, with his class and in good standing.  LECOM never deemed Dr. McCarthy academically deficient, and Dr. McCarthy progressed through each difficult academic hurdle encountered during his four-year course of study without any repeats of academic periods.  See Exhibit D; Exhibit R.

159.     Dr. McCarthy was at all times an active member of AFHPSP receiving full program benefits and pay as a member of the Naval Reserves, from the day he entered medical school until the day he graduated on June 4, 2017.  See Leave Earnings Statement dated June 15, 2017, attached hereto as Exhibit rr.

160.     Dr. McCarthy met all conduct, character, medical, physical fitness, weight standards, and requirements for active duty service at sea or shore-based facilities in the United States or abroad, and he was fully ready to complete his obligated service commitment to the Navy following graduation from medical school.

161.    Dr. McCarthy served forty-five (45) days of active duty naval service during each year he was in the AFHPSP, and when not ordered to active duty he was a member of the Navy Reserve.  See Exhibit C.

162.    Dr. McCarthy took all steps to attain a spot in a residency program, including scrambling at the last-minute to arrange residency training at LECOM-Health Millcreek Community Hospital in Erie, Pennsylvania.

### BCNR Petition

163.    Paragraph No. 20 of the AFHPSP Services Agreement requires exhaustion of administrative remedies through the United States Navy Board for the Correction of Military Records (BCNR) should a dispute arise over the terms and conditions of the AFHPSP. *See* Exhibit C.

164.    Dr. McCarthy submitted a BCNR petition on September 13, 2018 (the "BCNR Petition").  See Exhibit C; BCNR Petition DD 149 submitted September 13, 2018, attached hereto as **Exhibit ss.**

165.    The BCNR Petition seeks appropriate corrections to Dr. McCarthy's military record to bar the Navy's improper attempt to recoup the costs of the AFHPSP scholarship, and reimburse Dr. McCarthy for his lost career benefits, including lost wages, loss of creditable service toward retirement, loss of medical and insurance benefits, emotional distress, injury to professional reputation, and loss of professional opportunities.  See Exhibit **ss.**

### Defendant Wrongfully Withdrew Dr. McCarthy from the AFHPSP

166.    Paragraph No. 16 of the AFHPSP Services Agreement addresses suspension from the AFHPSP and gives Defendant the authority to suspend a student for the following

29

three reasons: (1) if a student is dropped by his professional school due to deficiencies in conduct or studies; (2) if, for other reasons, a student must repeat an academic period or discontinue his professional education; or (3) if a student refuses to comply with or fails to meet the applicable standards of the Navy (including weight, physical fitness and medical qualification).  See Exhibit C, ¶ 1 .

167.    In July 2018, Defendant communicated to Dr. McCarthy that it had withdrawn Dr. McCarthy from AFHPSP for academic reasons that were not due to his misconduct.  See Exhibit ll.

168.    Defendant specifically noted, "due to academic issues, you were unable to perform the agreed-upon active duty service.  As a result, repayment is required."  See Exhibit ll.

169.    Defendant's response to Dr. McCarthy contains the blatant mistruth that he was "unable to perform the agreed-upon active duty service."  See Exhibit ll.

170.    Defendant knew Dr. McCarthy had a medical degree and was at all times ready, eager and able to perform the active duty service obligations exactly as outlined in the AFHPSP Services Agreement.  See Exhibit P.

171.    Defendant also knew that Dr. McCarthy had a superlative performance record as a midshipman and officer which left no doubt about his ability to perform assigned duties in an outstanding fashion, or his commitment and dedication to a naval career.  See Exhibits G, H, I, J.

30

172.    LECOM, the "professional school" in the case of Dr. McCarthy, maintained exclusive authority to drop Dr. McCarthy from medical school for a deficiency in studies pursuant to the AFHPSP Services Agreement.  See Exhibit C, ¶16.

173.    The AFHPSP Services Agreement provides no independent authority for Defendant to withdraw Dr. McCarthy from medical school or overrule medical school determinations regarding a student's progression, suspension, discontinuation or degree attainment.

174.    Paragraph 12 of the AFHPSP Services Agreement, which deals specifically with performance on national written and practical exams, simply states that a second time failure of the examination *may* result in loss of scholarship eligibility.  See Exhibit C, ¶12.

175.    Given the obligation for all AFHPSP participants to complete all requirements for medical licensure at the first available date, this consequence is likely reserved for those students whose medical school progression is negatively impacted by their failure to pass the examination.  See Exhibit C, ¶12.

176.    LECOM never found Dr. McCarthy deficient in studies of conduct.  Even after two (2) failed attempts at the COMLEX 2 PE, LECOM Dean Ferretti wrote to Defendant and stated he was confident Dr. McCarthy would pass the PE exam on retake and was certain Dr. McCarthy would graduate with his class ready to serve effectively as a military doctor. See Exhibit W.

177.    Dr. McCarthy passed the COMLEX 2 PE on his third attempt and proceeded to obtain his medical degree without any break in progression.

178.   Despite Dr. McCarthy's performance of all obligations contained in the AFHPSP Services Agreement, Defendant breached the AFHPSP by withdrawing him from the AFHPSP for no justifiable reason and then demanding recoupment of medical school costs for which it had agreed to pay pursuant to the AFHPSP Services Agreement.

**Defendant's Offer for Dr. McCarthy to work as Civilian Doctor Contradicts its Finding that Dr. McCarthy was Academically-Deficient**

179.   Despite stating that he was separated from the Navy for "academic reasons" or "academic issues", Defendant offered Dr. McCarthy the opportunity to work for the Navy as a civilian doctor for the same period in which he would have been required to serve had he not been involuntarily separated by the Navy after medical school.  See Exhibit ll.

180.   Defendant's offer does not explain how Dr. McCarthy, deemed unqualified to serve as a military doctor due to academic deficiencies only months before, was now qualified to serve as a civilian doctor in the Navy.  See Exhibit ll.

181.   The professional and academic standards and qualifications for military and civilian physicians in the Navy are identical.

182.   Paragraph No. 18 of the AFHPSP Services Agreement permits the Navy to transfer the service requirement from active duty to civilian service if the student suffers a physical disability while in medical school.  See Exhibit C, ¶18.

183.   Defendant's offer to Dr. McCarthy to serve as a civilian doctor in the Navy tacitly and inherently admits that Dr. McCarthy is a qualified and capable physician able to perform as a Navy doctor.  See Exhibit ll.

184.    Defendant's offer to Dr. McCarthy to serve as a civilian doctor in the Navy implies that Dr. McCarthy progressed appropriately at medical school, was not deficient in his studies at medical school, and possesses the medical acumen to be a successful Navy doctor.

185.    Defendant's offer to Dr. McCarthy to serve as a civilian doctor is essentially a request for Dr. McCarthy to serve as a Navy doctor in the same capacity as a military medical officer, minus the significant military benefits and pension opportunities owed to him.

### Defendant's Involuntary Separation from the Navy Was Wrongful

186.    Along with being wrongfully withdrawn from AFHPSP despite full compliance with the terms of the AFHPSP Services Agreement, Dr. McCarthy was also summarily discharged from the Navy without due process or cause, effectively wiping out his six (6) years of prior active duty service as a naval officer.

187.    Federal law states that an officer in the Reserves who has at least five (5) years of service as a commissioned officer may not be separated from that component without his consent, the approved recommendation from a Board of Officers convened by the Secretary, or at the direction of a court-martial.  See Title 10 U.S.C. §12683.

188.    Dr. McCarthy did not consent to separation from the Navy Reserves.

189.    A Board of Officers convened by the Secretary of the Navy did not review Dr. McCarthy's separation from the Navy Reserves.

190.    Dr. McCarthy's separation from the Navy Reserves was not directed by a court-martial.

191.    Accordingly, Defendant violated federal law when it involuntarily separated Dr. McCarthy from the Navy Reserves.

192.    Dr. McCarthy's involuntary separation from the Navy Reserves was not the result of an administrative oversight where the Navy HPSP Program Director acknowledged Dr. McCarthy's six (6) years of prior service in the Navy prior to his graduation from LECOM. See Navy Acknowledgement of Prior Service Email dated November 14, 2016, attached hereto as **Exhibit tt**.  Rather, Defendant knowingly violated federal law regarding the involuntary separation of a non-probationary officer.

193.    As a result of Defendant's wrongful actions, Dr. McCarthy has suffered significant personal, financial, and professional hardships, including loss of accrued retirement benefits, lost wages, loss of medical and dental benefits for his family, relocation expenses, emotional distress, and prejudicial impact to his professional reputation and future medical opportunities.

**Defendant's Attempt to Recoup Cost of Medical School Is Improper**

194.    In exchange for Dr. McCarthy's successful completion of the AFHPSP and subsequent service commitment, Defendant agreed to cover the costs related to medical school.

195.    Defendant's demand that Dr. McCarthy pay for the costs related to his medical school attendance is improper where Dr. McCarthy fully performed his obligations related to the AFHPSP and was ready, willing and qualified to begin his service commitment as a Navy doctor when he became a licensed medical doctor in June 2017.  See Exhibit C; Exhibit D; Exhibit E.

196.    Per applicable Navy regulations, "[w]here failure to complete obligated service is the result of action not initiated by the Government, the member will reimburse the

Government for all tuition and other education costs incurred..."  See OPNAVINST 1520.39 AFHPSP Policies and Procedures, attached hereto as Exhibit uu.

197.    In this instance, Dr. McCarthy's inability to complete the obligated service commitment was a direct result of action initiated by the Government to involuntary discharge him without cause or due process, and not as a result of any other action.

198.    Dr. McCarthy submitted a detailed Remission of Indebtedness Request to Defendant on June 29, 2017 that provided a full chronology of events in question and challenged the legality of Defendant's action.  See Exhibit S.

199.    Defendant denied such request and improperly has demanded that Dr. McCarthy make full payment for in the amount of $251,194.41, even though Dr. McCarthy fulfilled all elements of the AFHPSP contract and was fully committed to completing his career as a Navy medical officer.  See Exhibit F.

**Defendant's Attempt to Recoup Cost of Medical School**
**Violated the Florida Consumer Collection Practices Act**

200.    In response to the letter Dr. McCarthy received from Defendant on August 28, 2018, see Exhibit F, Abel Bean Law sent DFAS a letter on September 13, 2018, notifying Defendant that Abel Bean Law represents Dr. McCarthy and requesting that Defendant direct all future communication regarding Dr. McCarthy's alleged debt to Abel Bean Law's attention. See Correspondence from Abel Bean Law to DFAS dated September 13, 2018, attached hereto as **Exhibit vv**.

201.    In spite of this request, Defendant contacted Dr. McCarthy directly when it sent him a Final Notice regarding his indebtedness on September 28, 2018.  See DFAS Final Notice, attached hereto as **Exhibit ww.**

35

202.    The Florida Consumer Collection Practices Act, Florida Statutes §559.55 et seq. ("FCCPA") prohibits persons from communicating directly with debtors when they know that attorneys represent such debtors and they have knowledge of such attorneys' name and address.  See §559.72(18), Fla. Stat. (2018).

203.    Because Defendant sent Dr. McCarthy the Final Notice after learning that Abel Bean Law represents Dr. McCarthy, Defendant's most recent attempt to recoup the cost of medical school violates the FCCPA.

<b>COUNT I - DECLARATORY JUDGMENT<br>REGARDING WRONGFUL WITHDRAWAL FROM AFHPSP</b>

204.    Dr. McCarthy repeats and realleges Paragraph Nos. 1 through 203 and incorporates them by reference herein.

205.    Defendant's withdrawal of Dr. McCarthy from the AFHPSP was wrongful where Defendant had no statutory, regulatory or contractual authority to trump the determination of an accredited medical school regarding the qualifications for a medical degree for those military students participating in the AFHPSP.

206.    With respect to academic performance, Defendant could only suspend Dr. McCarthy if LECOM found Dr. McCarthy deficient in studies or conduct – and LECOM made no such finding.  See Exhibit C, ¶16.

207.    Rather than finding him deficient in studies as Defendant claims, LECOM awarded Dr. McCarthy a medical degree and subsequently selected him for a position of leadership over interns across all residency programs at their flagship hospital.  See Exhibit kk.

208.    LECOM, not Defendant, had the best and singular authority to determine if Dr. McCarthy was deficient in studies while progressing through the medical curriculum it has established for medical students.

209.    The military services have entrusted LECOM to train and assess hundreds of prospective military doctors since they began enrolling medical students in the AFHPSP program.  See Exhibit xx.

210.    The fact that LECOM is a large civilian feeder program for military doctors in the armed forces is prima facie evidence of Defendant's confidence in LECOM to train, monitor, mentor and evaluate future military doctors.

211.     Defendant made little effort to accurately review the medical acumen of Dr. McCarthy before making an assessment he was academically deficient despite his attainment of a medical degree--a professional judgment it had no authority to second guess under the AFHPSP Services Agreement.  See Exhibits C, D, R.

212.    Had Defendant undertaken a fair and comprehensive review of the academic performance of Dr. McCarthy, he would have solicited greater input from LECOM Dean Dr. Anthony Ferretti, LECOM professors, civilian doctors and Navy medical officers that trained Dr. McCarthy during his four (4) years of medical school.

213.    The Navy doctors who observed Dr. McCarthy during his active duty clinical windows under the AFHPSP would not have recommended him for an internal medicine residency slot at Portsmouth Naval Hospital (serves Norfolk Naval Station - the largest Navy base in the world) if his medical skills and knowledge were deficient.

214.    All of these positive indicators of Dr. McCarthy's medical skills were available to Defendant when it stripped him of the naval medical officer opportunity he had worked much of his adult life to acquire.

215.    Defendant undertook no separate review process to assess Dr. McCarthy's academic performance at LECOM, nor explained in any official correspondence what it perceived as legal grounds to conclude that despite attaining a degree and being a licensed physician, Dr. McCarthy failed to progress at medical school and was deficient in his studies.

216.    Although Dr. McCarthy completed all terms of the AFHPSP while an active member of the program and completed all substantive requirements for his medical degree, Defendant wrongfully withdrew him from AFHPSP by email on the eve of graduation and involuntarily separated Dr. McCarthy from the Navy Reserve.  See Exhibits ii; COMNA VPERSCOM Letter 1920 dated June 2, 2017, attached hereto as Exhibit jj.

217.    These actions directly contradicted a Navy message sent to Dr. McCarthy earlier on the same day that contained reporting instructions for Portsmouth Naval Hospital on Monday June 5, 2017, and numerous other Navy messages previously sent to Dr. McCarthy which indicated his orders to active duty would be available in April 2017 and that he would be promoted to Lieutenant upon graduation from LECOM.  See Exhibits dd and ee.

218.    Defendant's action to withdraw Dr. McCarthy from the AFHPSP for alleged academic deficiency disregards LECOM accreditation and institutional independence to make such determinations, and it unjustly slanders Dr. McCarthy as being deficient as a health professional.

219.     This is an actual case or controversy in which Dr. McCarthy's rights and liabilities are in question. Dr. McCarthy respectfully requests a declaratory judgment to adjudicate the adverse interests of the parties.

## COUNT II – DECLARATORY JUDGMENT
## REGARDING INVOLUNTARY SEPARATION FROM NAVY RESERVES

220.     Dr. McCarthy repeats and realleges Paragraph Nos. 1 through 203 and incorporates them by reference herein.

221.     When Defendant wrongfully dropped Dr. McCarthy from the AFHPSP in breach of contract, Defendant also involuntarily separated him from the Navy and stripped him of the value of six years of creditable active service for military retirement services. See Exhibits C, D, yy.zz.

222.     Defendant had no legal, contractual or regulatory authority to involuntary separate Dr. McCarthy from the Navy under the circumstances.

223.     In fact, Dr. McCarthy's fourteen (14) years of Navy service in active and reserve capacities qualified him for statutory due process rights specifically designed to protect military personnel from involuntary separation.  See 10 U.S.C. § 12683.

224.     In spite of this statutory protection, Defendant blatantly failed to comply with such federal law when it ordered the involuntary separation of Dr. McCarthy from the Navy without due process.

225.     Specifically, Defendant did not obtain Dr. McCarthy's consent for his separation; a Board of Officers convened by the Secretary of the Navy did not review Dr. McCarthy's separation from the Navy Reserves; and Dr. McCarthy's separation from the Navy Reserves was not directed by a court-martial.

226.     Defendant's involuntary separation of Dr. McCarthy without due process or cause, ordered in blatant disregard of federal law, caused Dr. McCarthy damages for lost wages, loss of military benefits, loss of medical and dental benefits, loss of significant pension benefits, and loss of the opportunity to promote to higher military rank and pay.

227.     Defendant's wrongful separation of Dr. McCarthy from the Navy Reserves also caused harm to his professional reputation, loss of professional medical opportunities, and the infliction of emotional distress.

228.     This is an actual case or controversy in which Dr. McCarthy's rights and liabilities are in question. Dr. McCarthy respectfully requests a declaratory judgment to adjudicate the adverse interests of the parties.

## COUNT III – DECLARATORY JUDGMENT
### FAILURE TO PROVIDE WRITTEN DISCOVERY

229.     Dr. McCarthy repeats and realleges paragraph Nos. 1 through 203 and incorporates them by reference herein.

230.      Dr. McCarthy, pursuant to SECNAV INST 1920.6C, requested Defendant provide Dr. McCarthy with written discovery regarding his adversarial proceeding.

231.     Defendant wrongfully violated the Navy's own written discovery rule by failing to provide said requested discovery to Dr. McCarthy.

232.     This is an actual case or controversy in which Dr. McCarthy's rights and liabilities are in question. Dr. McCarthy respectfully requests a declaratory judgment to adjudicate the adverse interests of the parties.

## COUNT IV – DECLARATORY JUDGMENT
### IMPROPER ATTEMPT TO RECOUP MEDICAL SCHOOL COST

233.   Dr. McCarthy repeats and realleges paragraph Nos. 1 through 203 and incorporates them by reference herein.

234.   Dr. McCarthy completed all medical school and military requirements mandated by the AFHPSP Services Agreement, and he attained a medical degree in good standing and on time with his entering class on June 4, 2017.  See Exhibit D.

235.   In spite of Dr. McCarthy's notable academic performance and compliance with the AFHPSP Services Agreement, Defendant withdrew Dr. McCarthy from the AFHPSP and involuntarily separated Dr. McCarthy from the Navy Reserves.

236.   After declining the service of Dr. McCarthy, a medical school graduate and licensed doctor with significant Navy experience eager to continue his Navy career as a medical officer, Defendant demanded recoupment of medical school costs expended under the AFHPSP Services Agreement.  See Exhibits D; Medical Training License, State of Pennsylvania, attached hereto as Exhibit E.

237.   This demand is improper where Dr. McCarthy fully performed under the AFHPSP Services Agreement and was unable to complete his active duty commitment to Defendant through no fault of his own.

238.   Accordingly, there is no proper basis for Defendant's recoupment demand from Dr. McCarthy.

239.   This is an actual case or controversy in which Dr. McCarthy's rights and liabilities are in question. Dr. McCarthy respectfully requests a declaratory judgment to adjudicate the adverse interests of the parties.

## COUNT V –
## BREACH OF FLORIDA CONSUMER COLLECTION PRACTICES ACT

**(violation of §559.72, Fla. Stat.)**

240.    Dr. McCarthy repeats and realleges Paragraph Nos. 1 through 203 and incorporates them by reference herein.

241.    Defendant is a "person" attempting to collect a consumer debt within the meaning of the FCCPA.

242.    Abel Bean Law sent Defendant a letter on September 13, 2018, advising Defendant that Abel Bean Law represents Dr. McCarthy and requesting Defendant to direct all future communication regarding Dr. McCarthy's alleged indebtedness to Abel Bean Law.

243.    In spite of its knowledge that Abel Bean Law represented Dr. McCarthy, Defendant sent Dr. McCarthy the Final Notice regarding his alleged indebtedness on September 28, 2018.

244.    By communicating directly with Dr. McCarthy, Defendant engaged in the prohibited practice of communicating with a debtor when it knows that an attorney represents such debtor and has knowledge of the attorney's name and address.

245.    Accordingly, Defendant violated Section 559.72(18), Florida Statutes, when it communicated directly with Dr. McCarthy knowing that Abel Bean Law represented Dr. McCarthy with respect to his alleged debt and having knowledge of Abel Bean Law's name and address.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dr. John McCarthy respectfully requests that this Court, pursuant to the Uniform Declaratory Judgment Act, Title 28 United States Code §§ 2201 and 2202, declare the following:

a)  Dr. McCarthy fully satisfied all terms of the AFHPSP while an active member of the program, completed all substantive requirements for his medical degree and fully performed his obligations as identified by the AFHPSP Services Agreement;

b)  Defendant wrongfully discharged Dr. John McCarthy from the AFHPSP in breach of the AFHPSP Services Agreement;

c)  Defendant wrongfully separated Dr. McCarthy from the Navy and that such discharge was without due process or cause;

d)  Defendant wrongfully denied Dr. McCarthy his right to receive written discovery;

e)  Defendant wrongfully denied Dr. McCarthy wages and other benefits to which he was entitled;

f)  Defendant's recoupment of medical school costs from Dr. McCarthy is improper;

g)  Award Dr. McCarthy his reasonable costs, including reasonable attorneys' fees, incurred in this action; and

h)  Award such other and further relief as this Court deems just and proper.

WHEREFORE, Plaintiff Dr. John McCarthy respectfully requests that this Court enter a judgment against Defendant for: (1) actual and statutory damages as a result of Defendant's violation of Section 559.72, Florida Statutes, in accordance with Section 559.77, Florida Statutes; (2) reasonable attorneys' fees and costs incurred as a result of this action in accordance with Section 559.77, Florida Statutes; and (3) any such other and further relief as this Court deems just and proper.

Respectfully submitted,

By:  /s/ Daniel K. Bean

43

Daniel K. Bean, Esq.
Florida Bar No. 15539
ABEL BEAN LAW P.A.
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
Telephone: (904) 516-5486
*dbean@abelbeanlaw.com*

**Attorney for Plaintiff, Dr. John**
**McCarthy**