# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

DR. JOHN DANIEL MCCARTHY,

      Plaintiff,

vs.                                    Case No.  3:18-cv-1213-MMH-LLL

CARLOS DEL TORO, Secretary of
the Navy,

      Defendant.

_____/

## O R D E R

**THIS CAUSE** is before the Court on the Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 110; Motion), filed by Defendant Carlos Del Toro, Secretary of the Navy (the Secretary), on May 10, 2022.  Plaintiff Dr. John Daniel McCarthy filed a response in opposition to the Motion.  See Response in Opposition to Motion to Dismiss Second Amended Complaint (Doc. 113; Response), filed May 31, 2022.  With leave of the Court, the Secretary filed a reply, and McCarthy filed a sur-reply.  See Defendant's Reply in Support of Motion to Dismiss Second Amended Complaint (Doc. 116; Reply), filed June 15, 2022; Plaintiff's Sur-Reply in Support of Opposition to Motion to Dismiss Second Amended Complaint (Doc. 117; Sur-Reply), filed June 30, 2022. Accordingly, this matter is ripe for review.

## I.    Background[1]

Between 2005 and 2011, McCarthy served as an active-duty officer in the United States Navy.   See Second Amended Complaint for Declaratory, Injunctive, and Mandamus Relief (Doc. 105; Second Amended Complaint) ¶ 6. Later, in 2013, McCarthy signed a contract, in which the Navy agreed to finance the cost of McCarthy's medical school education.   See id. ¶ 28; Second Amended Complaint, Ex. C (Doc. 105-3; Service Agreement) at 2–4.   In the Service Agreement, McCarthy promised to serve as an ensign in the Navy Reserve while he was in medical school.   Second Amended Complaint ¶ 63; Service Agreement at 2.   McCarthy also agreed to serve four more years as an active-duty officer after graduating from medical school (Service Obligation).   Service Agreement at 4.   The Service Agreement included a provision requiring McCarthy to repay the scholarship money paid by the United States for his education if he did not perform the Service Obligation because of his own misconduct.   Id.

In the Service Agreement, McCarthy promised to "take and pass" parts I and II of the Comprehensive Osteopathic Medical Licensing Examination. Service Agreement at 6.   The Service Agreement provided that "[a] second time failure of the examination or clinical skills examination may result in loss of

---

[1] In considering the Motion, which asserts a facial challenge to the Court's jurisdiction, the Court must accept all factual allegations in the Second Amended Complaint as true. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).   As such, the facts recited here are drawn from the Second Amended Complaint and its exhibits and may well differ from those that ultimately can be proved.

scholarship eligibility." Id.  McCarthy failed his clinical skills examination twice but passed it on the third attempt.  See Second Amended Complaint ¶¶ 102, 112; Second Amended Complaint, Ex. ppp (Doc. 105-68; BCNR Decision) at 5–6.  In response to McCarthy's failure to pass the clinical skills examination in his first two attempts, the Navy removed him from the Armed Forces Health Professions Scholarship Program (Program) and honorably discharged him from the Navy Reserve on June 2, 2017.  See Second Amended Complaint ¶¶ 126–27; Second Amended Complaint, Ex. ii (Doc. 105-35).  Two days later, on June 4, 2017, McCarthy graduated on time from medical school.  See Second Amended Complaint ¶ 131.  In July 2018, the Navy notified McCarthy that it would seek to recoup the funds that it had paid to cover his medical school expenses.  See id. ¶ 140.  In response to the Navy's actions, McCarthy submitted a petition to the Board for Correction of Naval Records (BCNR).  See id. ¶ 169. In his September 13, 2018 petition, McCarthy asked the BCNR to find that he was wrongfully removed from the Program, was illegally discharged from the Navy, is not in debt to the Navy, and suffered numerous financial and professional injuries because of the Navy's actions.  Id. ¶ 170; Second Amended Complaint, Ex. ss (Doc. 105-45).

On December 19, 2020, the BCNR issued a decision in which it recommended a resolution of McCarthy's petition to the Secretary.  See generally BCNR Decision.  The BCNR found that McCarthy was discharged

from the Navy without the process to which he was due. Id. at 8. In addition, the BCNR concluded that the recoupment action was unjust because a valid discharge from the Navy is a prerequisite for recouping the scholarship funds. See id. at 8–9. With regard to McCarthy's removal from the Program, the full BCNR found that the Secretary had the legal authority to remove McCarthy from the Program. See id. at 9–10. However, the members of the BCNR disagreed about whether removing McCarthy from the Program was unjust. See id. at 10–11. The majority of the BCNR concluded that McCarthy's removal from the Program was unjust, but the minority found that the removal was not unjust because McCarthy failed to pass the clinical skills examination within his first two attempts. Id.

The full BCNR recommended voiding McCarthy's discharge and giving him constructive service credit as an inactive commissioned naval officer from the date of his improper discharge until the date of his reinstatement. Id. at 8, 11. The BCNR also recommended that the recoupment action be cancelled without prejudice to later reinstatement if appropriate. Id. at 11. Finally, the BCNR recommended returning McCarthy's case to the relevant command to determine whether the Navy should invoke the Service Obligation. Id. at 11–12. On February 10, 2021, the Secretary adopted the BCNR's unanimous recommendations and findings and approved the minority's conclusion that McCarthy's removal from the Program was not unjust. Id. at 13–14.

McCarthy initiated this action on October 12, 2018, by filing a Complaint (Doc. 1) for declaratory relief.   On January 10, 2020, McCarthy filed an Amended Complaint for Declaratory Judgment (Doc. 51; Amended Complaint). Given the then-ongoing BCNR proceedings, the Court stayed the action on April 13, 2020.   See Order (Doc. 65).   After the BCNR issued its decision, the Court reopened the case on July 23, 2021.   See Order (Doc. 82).   McCarthy then moved for partial summary judgment.   Motion for Partial Summary Judgment (Doc. 83), filed July 30, 2021.   On February 23, 2022, the Court held a hearing at which, with the agreement of counsel, it denied without prejudice the motion for partial summary judgment and granted McCarthy leave to file a second amended complaint.   See Clerk's Minutes (Doc. 102).

McCarthy filed his Second Amended Complaint on March 25, 2022.   In his first five counts, McCarthy seeks declaratory judgments.   In Count I, McCarthy asks the Court to "declare that [the Secretary] wrongfully and unlawfully dropped Dr. McCarthy from [the Program] notwithstanding Dr. McCarthy's successful graduation from medical school and completion of all requirements of the [ ] Program."  Second Amended Complaint ¶ 250.   In Count II, McCarthy requests that the Court "declare that [the Secretary] wrongfully and unlawfully separated Dr. McCarthy from the United States Navy without providing due process requirements."  Id. ¶ 266.   In Count III, McCarthy seeks a declaration that he "is entitled to application of the constructive service

doctrine, providing for full back pay, allowances, automatic promotion to the grade of O-3 (which would have occurred but for the Navy's illegal discharge), and other benefits of service including active-duty credits for retirement purposes." Id. ¶ 274. In Count IV, McCarthy asks the Court to declare that the Secretary "wrongfully and unlawfully violated the Navy's own regulation regarding due process discovery rights." Id. ¶ 278. And, in Count V, McCarthy asserts that the Court should declare that the Secretary "unlawfully attempted to recoup the full cost, with interest and penalties, of the [Program] notwithstanding Dr. McCarthy's aforementioned unlawful removal from [the Program] and unlawful involuntary discharge from the Navy." Id. ¶ 286.

In Count VI, McCarthy asserts a claim under the Administrative Procedure Act (APA), 5 U.S.C. § 706, and asks the Court to "hold and declare [the Secretary's] actions unlawful and set them aside." Second Amended Complaint ¶ 290. In Count VII and Count VIII, McCarthy alleges that the Secretary has unreasonably failed "to issue a DD-214 evidencing Dr. McCarthy's correct active status credit;" "to issue sufficient notice of a 'with prejudice' revocation of the recoupment action;" and "to apply the constructive service doctrine, providing for full back pay, allowances, automatic promotion to the grade of O-3 (which would have occurred but for the Navy's illegal discharge), and other benefits of service including active-duty credits for retirement purposes." Id. ¶¶ 296–98, 307–09. Therefore, in Count VII,

pursuant to the APA, McCarthy asks the Court to order the Secretary to perform these actions.  Id. ¶ 302.  And, in Count VIII, McCarthy makes the same request pursuant to the mandamus statute, 28 U.S.C. § 1361.  Second Amended Complaint ¶ 313.  In Count IX, McCarthy seeks attorney's fees under the Equal Access to Justice Act.  Id. ¶¶ 315–16.

On May 10, 2022, the Secretary moved to dismiss the Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)).  In the Motion, the Secretary raises several arguments in support of his request to dismiss the Second Amended Complaint.  See Motion at 1, 9–10.  Upon review of the parties' briefing, the Court finds that it needs to address only the Secretary's facial challenge to subject matter jurisdiction.

## II.    Standard of Review

Federal courts are courts of limited jurisdiction "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress."  Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Indeed, jurisdiction is the power of the Court to declare the law.  Id. at 410.  "When a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power."  Id. at 409 (internal quotation omitted).  Such action

offends the "principles of separation of powers." Id. at 410 (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)).  As such, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, it must dismiss" the claim.  See Rule 12(h)(3); see also Univ. of S. Ala., 168 F.3d at 410 ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").  The jurisdiction of the federal court may be attacked facially or factually.  Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).  In a facial challenge, a court assumes the allegations in the complaint are true and determines whether the complaint sufficiently alleges a basis for subject matter jurisdiction.  Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

## III.   Discussion

Having reviewed the Second Amended Complaint, the parties' briefing, and the applicable law, the Court concludes that this action is due to be dismissed without prejudice for lack of subject matter jurisdiction.

### A.     Summary of the Relevant Arguments

In the Motion, the Secretary argues that the Court does not have jurisdiction over McCarthy's claims because McCarthy has failed to identify a waiver of the United States' sovereign immunity.  See Motion at 10–20.  The Secretary contends that McCarthy cannot rely on the waiver of sovereign immunity in the APA because he seeks money damages in the form of back pay.

See id. at 11–13.  According to the Secretary, the "essence" of McCarthy's suit is to obtain money from the United States, even though McCarthy purports to seek declaratory, injunctive, and mandamus relief.  Id. at 13–16; Reply at 5–8. The Secretary also maintains that McCarthy's claims fall outside of the APA's waiver of sovereign immunity because an adequate remedy exists in the Court of Federal Claims.  See Motion at 16–18; Reply at 1–3.

In his Response, McCarthy asserts that the APA's waiver of sovereign immunity applies to his APA claims and his claims for declaratory and injunctive relief.  See Response at 14–15.  McCarthy contends that the Supreme Court's holding in Bowen v. Massachusetts, 487 U.S. 879 (1988), determined that the APA's waiver of sovereign immunity applies here.  See Response at 16–17; Sur-Reply at 4–5.  According to McCarthy, he does not seek money damages; he seeks only to "effect action by the United States Navy."  Response at 16–18. McCarthy argues that the "Court of Federal Claims lacks jurisdiction to adjudicate" his claims concerning his allegedly improper removal from the Program and the Navy's recoupment of the scholarship funds.  Id. at 19 n.3.

## B.   Applicable Law

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  Campbell v. United States, 962 F.2d 1579, 1581 (11th Cir. 1992) (quoting United States v. Sherwood, 312 U.S. 584, 586

(1941)).  In the Tucker Act, 28 U.S.C. § 1491, and in the APA, the United States has waived sovereign immunity for certain types of actions.  "The Tucker Act both waives sovereign immunity for, and grants the Court of Federal Claims exclusive jurisdiction over, actions for money damages of more than $10,000."[2] Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev., 480 F.3d 1116, 1121 (Fed. Cir. 2007); Keller v. Merit Sys. Prot. Bd., 679 F.2d 220, 222 (11th Cir. 1982) (per curiam).[3]

In 5 U.S.C. § 702, the APA waives the United States' sovereign immunity for an action "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." § 702.  But, in 5 U.S.C. § 704, the APA specifies that only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  § 704 (emphasis added).  The Eleventh Circuit Court of Appeals has held that the provisions in § 704 limit the waiver of sovereign immunity in § 702.  See Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236, 1240 (11th Cir. 2003); United States v. Simon, 609 F. App'x 1002,

---

[2]  The United States Court of Federal Claims was previously named the United States Claims Court and is the successor to the trial division of the United States Court of Claims.

[3]  The related Little Tucker Act grants district courts concurrent jurisdiction over claims against the government which seek no more than $10,000.  See 28 U.S.C. § 1346(a)(2).

1007 (11th Cir. 2015) (per curiam);[4] see also Bowen, 487 U.S. at 891 (noting that the plaintiff must defeat jurisdictional arguments based on §§ 702 and 704 "in order to prevail"). Importantly, a Tucker Act claim in the Court of Federal Claims "has been held to be an adequate remedy" for the purposes of § 704. Ala. Rural Fire Ins. Co. v. Naylor, 530 F.2d 1221, 1230 (5th Cir. 1976);[5] see Suburban Mortg. Assocs., 480 F.3d at 1126 ("[T]he availability of an action for money damages under the Tucker Act or Little Tucker Act is presumptively an 'adequate remedy' for § 704 purposes." (quoting Telecare Corp. v. Leavitt, 409 F.3d 1345, 1349 (Fed. Cir. 2005))).

Pursuant to the APA's waiver of sovereign immunity, district courts may hear challenges to certain actions of the military. See Clinton v. Goldsmith, 526 U.S. 529, 539 (1999). However, "[a] money claim which can be assuaged only by expenditure from the Treasury of the United States cannot be entertained without a statutory grant of jurisdiction to a United States court, and dressing it up as a review under the APA does not help at all." Rhodes v. United States, 760 F.2d 1180, 1184 (11th Cir. 1985). Indeed, "[a] plaintiff cannot avoid the

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

jurisdictional limitations of the Tucker Act . . . by artful pleading." <u>Friedman v. United States</u>, 391 F.3d 1313, 1315 (11th Cir. 2004) (per curiam); <u>see</u> <u>Consol. Edison Co. of N.Y. v. U.S., Dep't of Energy</u>, 247 F.3d 1378, 1385 (Fed. Cir. 2001) (collecting cases).

The Court of Appeals for the Federal Circuit has provided extensive guidance for determining whether a claim falls within the scope of the Tucker Act or the APA.[6]  When making this determination, a district court first must discern whether the "true nature of a plaintiff's claim" is a "claim for money." <u>Suburban Mortg. Assocs.</u>, 480 F.3d at 1124.  Then, the district court "must determine whether the claim is excluded from APA jurisdiction by the limitations in 5 U.S.C. §§ 702 and 704." <u>Id.</u>  The Federal Circuit has instructed that, instead of analyzing whether the plaintiff seeks "money damages" within the meaning of 5 U.S.C. § 702, "the better course" is to begin "with the question

---

[6]  Since 1988, the Federal Circuit has developed much of the case law regarding the scope of the Tucker Act.  <u>See</u> <u>Suburban Mortg. Assocs.</u>, 480 F.3d at 1128.  In that year, Congress enacted a statute "providing that, when a district court order grants or denies a motion to transfer a suit against the Government to the Court of Federal Claims, an interlocutory appeal can be taken by either plaintiff or the Government." <u>Id.</u> at 1123–24; <u>see</u> 28 U.S.C. § 1292(d)(4). Congress granted the Federal Circuit exclusive jurisdiction over these interlocutory appeals "[t]o ensure uniform application of all Tucker Act issues in a single forum." <u>Suburban Mortg. Assocs.</u>, 480 F.3d at 1123–24. Here, no party has moved the Court to transfer the action to the Court of Federal Claims. Therefore, the Eleventh Circuit, not the Federal Circuit, would have jurisdiction over any appeal from this order. But, because of the unique role that Congress has given the Federal Circuit in determining the jurisdictional scope of the Tucker Act, the Federal Circuit's opinions have significant persuasive authority. Moreover, if this Court issued a declaratory judgment or injunction relating to a monetary claim in contravention of the Federal Circuit's holdings about the United States' sovereign immunity, that judgment would be of no use to McCarthy in seeking a later money judgment from the Court of Federal Claims. <u>See</u> <u>Christopher Vill., L.P. v. United States</u>, 360 F.3d 1319, 1333 (Fed. Cir. 2004).

raised by 5 U.S.C. § 704—is there an 'adequate remedy' in a court other than the district court, that is, can the Court of Federal Claims provide an adequate remedy under the Tucker Act for the alleged wrong?" Id. at 1124–25. The resolution of this question "often will be dispositive." Id. at 1125.

To resolve this question, the district court must ask (1) whether "the jurisdictional requirements of the Tucker Act are satisfied, i.e., the claim is for more than $10,000 and is based on a money-mandating statute, regulation, or constitutional provision, or an express or implied contract with the Government;" and (2) whether "the Court of Federal Claims through a money judgment can provide an adequate remedy under the Tucker Act." Id. at 1125–26. The Court of Federal Claims must be able to award "full relief." Christopher Vill., 360 F.3d at 1333 n.6. If the Court of Federal Claims can provide full relief, "the proper forum for resolution of the dispute is not a district court under the APA but the Court of Federal Claims under the Tucker Act." Suburban Mortg. Assocs., 480 F.3d at 1126.

Similar to the APA, the mandamus statute, 28 U.S.C. § 1361, "waives, for some purposes, the sovereign immunity of the United States." Drake v. Panama Canal Comm'n, 907 F.2d 532, 534 (5th Cir. 1990) (quoting McClain v. Panama Canal Comm'n, 834 F.2d 452, 454 (5th Cir. 1987)). However, mandamus is an extraordinary remedy available only upon a showing that the plaintiff has no other adequate remedy. Cash v. Barnhart, 327 F.3d 1252, 1258 (11th Cir.

2003).  Typically, where a statute provides for administrative or judicial review of an agency's actions, mandamus relief is unavailable.  See Lifestar Ambulance Serv., Inc. v. United States, 365 F.3d 1293, 1295 (11th Cir. 2004) (citing Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 27–28 (1943)).

### C.    Availability of Another Adequate Remedy

Applying this statutory framework, the Court finds that the United States has not waived sovereign immunity for McCarthy's claims in this action because the Court of Federal Claims provides him with an adequate remedy. The Court first notes that McCarthy seeks monetary relief.  Throughout the Second Amended Complaint, McCarthy asks the Court to declare that he is "entitled to application of the constructive service doctrine, providing for full back pay."  Second Amended Complaint ¶¶ 1, 12, 24, 35, 225, 262, 272, 274 (emphasis added).   McCarthy also seeks "injunctive and mandamus relief compelling . . . the Navy's application of the constructive service doctrine, providing for full back pay, allowances, automatic promotion to the grade of O-3 (which would have occurred but for the Navy's illegal discharge), and other benefits of service."  Id. ¶¶ 3, 17–18, 25, 36, 302, 313 (emphasis added).  In sum, McCarthy has asked the Court to declare that he is entitled to back pay as an active-duty officer in the grade O-3 (a lieutenant in the Navy) and to compel the Navy to provide him this back pay.  Granting McCarthy the relief he seeks would settle that he is entitled to an expenditure from the United States

- 14 -

Treasury.  See Keller, 679 F.2d at 222–23 ("The district court's resolution of appellee's right to reinstatement effectively disposed of all issues concerning his right to backpay except the amount.  Hence such adjudication by the district court substantially infringed on the Court of Claims' exclusive jurisdiction over appellee's backpay claim.").  Although McCarthy frames his complaint as seeking only declaratory and injunctive relief, he cannot avoid the limits of the Tucker Act through artful pleading.  See Rhodes, 760 F.2d at 1184; Friedman, 391 F.3d at 1315; Carter v. Seamans, 411 F.2d 767, 771 (5th Cir. 1969) (per curiam) ("That the complaint is cast in terms of a declaratory judgment action cannot alter the fact that what in substance is sought is a money judgment against the United States for back pay in excess of $10,000.").

McCarthy argues that this case is about "far more" than providing him money.  Sur-Reply at 2.  While that may be true, the Court does not need to determine what requests for relief form "the essence" of the Second Amended Complaint because McCarthy has made an "explicit request for monetary relief."  Schwalier v. Hagel, 734 F.3d 1218, 1221–22 (D.C. Cir. 2013) ("Schwalier's request for back pay, on the other hand, is unambiguously monetary in nature, and he requested it directly from the court."); Palacios v. Spencer, 906 F.3d 124, 126–27 (D.C. Cir. 2018).  In addition, the Court notes that McCarthy's subjective belief about which forms of relief are more

important cannot control the jurisdictional inquiry.[7]  See Wolfe v. Marsh, 846 F.2d 782, 785 (D.C. Cir. 1988) (per curiam) ("Given the need for certainty as to jurisdiction, we cannot allow plaintiff's subjective intent, ambiguously expressed, to control the issue."); Palacios v. Spencer, 267 F. Supp. 3d 1, 6 (D.D.C. 2017) ("[A] plaintiff who requests monetary damages cannot avoid the Tucker Act by saying that he cares more about non-monetary relief."), aff'd in part, appeal dismissed in part, 906 F.3d 124.[8]  Finally, because McCarthy's entitlement to back pay rests on the "same factual predicate" and "essentially the same legal bases" as his entitlement to the other requested relief, he has presented "one claim."  Keller, 679 F.2d at 222–23.  Thus, the Court concludes that the "true nature" of McCarthy's claim is a "claim for money."[9]  Suburban Mortg. Assocs., 480 F.3d at 1124.

---

[7]  Were the Court to consider McCarthy's subjective intentions, the Court would give significant weight to counsel's repeated representations that McCarthy is trying to obtain a judgment that he may use to recover money.  See Motion Hearing (Doc. 62) at 22 ("Our research indicated we could plead around the Tucker Act for purposes of getting a declaratory judgment . . . .  Then if they don't do the right thing, then we go . . . and we seek a monetary damage."); Motion Hearing (Doc. 103) at 21 ("If we go to the Claims Court—the United States Federal Claims Court with this judgment saying [the Navy] violated the law, from that it flows . . . ."); id. at 22 ("Once this Court enters a ruling . . . certain things will flow from that, one of which is the application of the constructive service doctrine . . . ."); id. at 23–24 ("I'm not asking this Court to enter the back pay order, the number, because this Court doesn't have the jurisdiction, because that number is huge." (emphasis added)).

[8]  The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[9]  Although there may be some debate about whether back pay is "money damages" within the meaning of 5 U.S.C. § 702, see Klaskala v. U.S. Dep't of Health & Hum. Servs., 889

Because McCarthy seeks to recover money from the United States, the Court next considers whether a suit under the Tucker Act in the Court of Federal Claims would offer McCarthy an adequate remedy.  See id. at 1125.  In answering that question, the Court first notes that McCarthy's claim "is for more than $10,000 and is based on a money-mandating statute."  Id. at 1125–26.  When, as here, a plaintiff asserts a right to back pay but does not specify the amount, courts have considered the length of time and the salary at issue in determining whether the claim is for more than $10,000.  See Keller, 679 F.2d at 222 n.4; Palacios, 267 F. Supp. 3d at 5–6.  McCarthy represents that he is entitled to four years of back pay as an active-duty lieutenant.  As the Secretary states, and McCarthy does not contradict, this amount would be far more than $10,000.  See Motion at 13 n.5.  In addition, McCarthy's claim for back pay would be based on a money-mandating statute, the Military Pay Act, 32 U.S.C. § 204.  See Strickland v. United States, 423 F.3d 1335, 1336 n.1 (Fed. Cir. 2005).  As such, the Court finds that McCarthy's claim satisfies the jurisdictional requirements of the Tucker Act.

The Court next considers whether "the Court of Federal Claims through a money judgment can provide an adequate remedy" for all of McCarthy's

---

F. Supp. 480, 486 n.6 (S.D. Fla. 1995), there is no debate that back pay is money.  See Bowen, 487 U.S. at 900 n.31 ("The jurisdiction of the Claims Court, however, is not expressly limited to actions for 'money damages,' whereas that term does define the limits of the exception to § 702." (citation omitted)).

requests for relief.  Suburban Mortg. Assocs., 480 F.3d at 1125–26.  In addition to seeking back pay, McCarthy asks the Court to declare that the following actions were unlawful and to set them aside: McCarthy's removal from the Program, the Navy's denial of written discovery, the Navy's denial of military benefits, the Navy's recoupment efforts, and McCarthy's discharge from the Navy Reserve.  See Second Amended Complaint ¶¶ 1–3.  McCarthy also asks the Court to compel the Navy to issue a DD-214 showing his correct active service credit; issue notice of a "with prejudice" revocation of the Navy's recoupment action; and apply the constructive service doctrine by providing McCarthy full back pay, allowances, promotion to the grade of O-3, and other benefits of service including active-duty credits for retirement purposes.  See id.

The Court of Federal Claims can grant adequate relief for all of these requests.  Although the Court of Federal Claims generally cannot award equitable relief, it can grant equitable relief incidental and collateral to a money judgment.  See Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec., 490 F.3d 940, 943 & n.3 (Fed. Cir. 2007).  The Tucker Act states, "To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records . . . ."  28 U.S.C. § 1491(a)(2).  Indeed, the Court of Federal Claims and its predecessor courts

have "ordered back pay, restoration to military office, placement in correct retirement status, and correction of military records." <u>Mitchell v. United States</u>, 930 F.2d 893, 896 (Fed. Cir. 1991) (citations omitted).  The Court of Federal Claims also can apply the constructive service doctrine to "return successful plaintiffs to the position that they would have occupied 'but for' their illegal release from duty." <u>Barnick v. United States</u>, 591 F.3d 1372, 1379 (Fed. Cir. 2010) (quoting <u>Dilley v. Alexander</u>, 627 F.2d 407, 413 (D.C. Cir. 1980)). Moreover, while the Court of Federal Claims lacks the authority to promote a servicemember, the court can recognize a wrongfully withheld promotion by awarding back pay as if the servicemember had been promoted. <u>See Lewis v. United States</u>, 458 F.3d 1372, 1377–78, 1378 n.8 (Fed. Cir. 2006); <u>Carter</u>, 411 F.2d at 774 ("Carter prays for a declaration that he was promoted to the rank of Colonel on November 24, 1967.  This relief is likewise available in the Court of Claims in the proper circumstances.").  Therefore, the Court of Federal Claims can find that the Navy wrongfully discharged McCarthy without the proper procedural protections and discovery, and the court can correct McCarthy's records to reflect four years of active-duty service as a lieutenant with an entitlement to military benefits and retirement credits.

McCarthy argues that the Court of Federal Claims cannot grant adequate relief for the claims about his removal from the Program and about the Navy's recoupment of his educational expenses. <u>See</u> Response at 19 n.3.  However, the

Court of Federal Claims would have to resolve those issues to grant McCarthy the back pay that he requests.  If McCarthy was <u>lawfully</u> removed from the Program before his graduation, there is no basis for him to recover back pay as an active-duty lieutenant because he was an ensign in the Navy Reserve when he was discharged.  <u>See</u> Second Amended Complaint ¶ 63; Service Agreement at 2.  Thus, to determine that the Navy would have moved McCarthy to active-duty status, promoted him to lieutenant, and had him serve four years, the Court of Federal Claims would have to find that McCarthy should not have been removed from the Program.  In essence, to grant McCarthy a money judgment of back pay, the Court of Federal Claims would have to "declare" that the Navy wrongfully removed him from the Program.  <u>Cf.</u> <u>Kanemoto v. Reno</u>, 41 F.3d 641, 645–46 (Fed. Cir. 1994) ("[T]he decision by the Court of Federal Claims would 'declare' the proper interpretation of the statute.").

With regard to the Navy's recoupment of McCarthy's medical school expenses, McCarthy couples his request for debt relief with his claim for back pay, and both claims arise from the same factual predicate.  If the Court of Federal Claims determines that McCarthy is entitled to back pay because he constructively served four years, the Navy would have no basis for seeking recoupment.  Notably, the Federal Circuit has found that the Court of Federal Claims can provide adequate relief in some circumstances even when the court cannot give the precise prospective relief that was requested.  <u>See</u> <u>Consol.</u>

Edison, 247 F.3d at 1384–85.   In Consolidated Edison, a group of utility companies sued the United States in district court for declaratory and injunctive relief, asserting that the Energy Policy Act of 1992 (EPACT) was unconstitutional.  Id. at 1380.  Under EPACT, the government required utility companies to pay annual assessments for decontaminating and decommissioning nuclear facilities.  Id. at 1381.  In an appeal of the district court's denial of a motion to transfer the case to the Court of Federal Claims, the Federal Circuit found that the APA did not waive sovereign immunity for plaintiffs' claims because the Court of Federal Claims "can provide an 'adequate remedy' in this case within the meaning of § 704."  Id. at 1382.  The Federal Circuit concluded,

> In the event of success in [their] claims before the Court of Federal Claims, [plaintiffs] will receive a refund of all payments under EPACT because the United States illegally exacted those funds. In the face of such a judgment, the United States could not proceed to assess further EPACT payments without again illegally exacting funds. Res judicata principles would require immediate refund of any assessment with interest.

Id. at 1384–85.  Although the Court of Federal Claims could not give the plaintiffs an "explicit grant of prospective relief," the court could provide an adequate remedy.  Id. at 1384.  In a similar way, in the face of a judgment that McCarthy is entitled to back pay for four years of constructive active-duty service, the Navy could not seek recoupment on the grounds that McCarthy did

not fulfill his Service Obligation.   Therefore, a judgment from the Court of Federal Claims could provide McCarthy full relief.

Because McCarthy explicitly seeks back pay and the Court of Federal Claims could give him full relief, this case is distinguishable from cases finding that a claim for debt relief falls under the APA instead of the Tucker Act.  In those cases, the plaintiffs were not pursuing monetary claims that were within the jurisdiction of the Court of Federal Claims and that would necessarily resolve the validity of the contested debt.  See Gonzales & Gonzales Bonds & Ins. Agency, 490 F.3d at 945 (finding that the Court of Federal Claims does not have jurisdiction to hear a claim seeking only debt cancellation); Postels v. Peters, No. CIV.A. 99-2369, 2000 WL 280018, at *5 (E.D. La. Mar. 15, 2000) ("Nowhere in the complaint does Postels ask for monetary damages.  Moreover, the injunctive and declaratory relief he requests would not compel the government to pay him any money from the public treasury."); Lawrence v. United States, 69 Fed. Cl. 550, 554 (Fed. Cl.) ("To the extent Plaintiff's challenge to GSA's refusal to grant a waiver can be characterized as a claim for money damages . . . such claim does not derive from a money-mandating statute."), aff'd, 206 F. App'x 993 (Fed. Cir. 2006).  Unlike the plaintiffs in Gonzales & Gonzales Bonds & Ins. Agency and Postels, McCarthy explicitly asks for an order compelling back pay.  And, unlike the plaintiff's claim in Lawrence, McCarthy's monetary claim for back pay arises from a money-mandating

statute.  Therefore, the Court of Federal Claims would have jurisdiction to resolve McCarthy's monetary claim and, in doing so, to resolve the validity of the debt.

Finally, the Court rejects McCarthy's assertion that the Supreme Court's decision in <u>Bowen</u> establishes that this Court has jurisdiction over his claims. <u>See</u> Response at 16–17; Sur-Reply at 4–5.  In <u>Bowen</u>, the Supreme Court held that a district court had "jurisdiction to review a final order of the Secretary of Health and Human Services refusing to reimburse a State for a category of expenditures under its Medicaid program."  487 U.S. at 882, 912.  Although the State's request for declaratory and injunctive relief had "monetary aspects," the Supreme Court found that the district court could hear the suit under the APA. <u>Id.</u> at 893, 912.  First, the Supreme Court concluded that the State was not asking for "money damages," as used in 5 U.S.C. § 702, because the State sought the very thing that the statute mandated—a grant of money.  <u>Id.</u> at 900. Second, the Supreme Court found that the Claims Court did not provide an adequate remedy within the meaning of 5 U.S.C. § 704, given the specific circumstances of the case.  <u>Id.</u> at 901–08.  The Federal Circuit has summarized the key circumstances that led to the Supreme Court's conclusion in <u>Bowen</u>:

> <u>Bowen</u> was a dispute between two sovereigns—a state government and the federal government—implicating federalism issues; the dispute centered on the administration of a major federal grant, the Medicaid program, involving enormous sums of money and complex interactions between the governments and the

> beneficiaries; at issue were the institutional arrangements between these two governments; the governments were locked into a fabric of long-term administration of the program; and the money involved in the uncovered education services was a small fraction of the total reimbursement the state received each year for its Medicaid costs under the program.  In addition, the Court's focus was on the statutory requirements set forth in this complex grant program—nowhere in <u>Bowen</u> did the Court make reference to the existence of any specific contract or express agreement defining the relationship between the parties.

<u>Suburban Mortg. Assocs.</u>, 480 F.3d at 1127.

Here, these circumstances do not exist.  In contrast, McCarthy's "case is specifically the kind of claim for which the [Court of Federal Claims] can provide 'special and adequate review procedures.'"  <u>Mitchell</u>, 930 F.2d at 896 (quoting <u>Bowen</u>, 487 U.S. at 900–01 n.31, 903–05 & n.39).  Where a former federal employee seeks money from the United States as well as other forms of relief arising from the same facts as the money claim, courts have routinely held that the entire case should be brought in the Court of Federal Claims.  <u>See</u> <u>Palacios</u>, 906 F.3d at 127; <u>Mitchell</u>, 930 F.2d at 896; <u>Keller</u>, 679 F.2d at 222–23; <u>Carter</u>, 411 F.2d at 771.  Thus, the Court finds that McCarthy's reliance on <u>Bowen</u> is unavailing.

Because the Court of Federal Claims can provide an adequate remedy to McCarthy, the APA's waiver of sovereign immunity does not extend to his

claims.[10]  <u>See</u> 5 U.S.C. § 704.  For the same reason, the mandamus statute does not provide a waiver of sovereign immunity here.  <u>See</u> <u>Cash</u>, 327 F.3d at 1258; <u>Carter</u>, 411 F.2d at 773.  Without a waiver of sovereign immunity, this Court has no jurisdiction to hear McCarthy's case.  As such, the Motion is due to be granted to the extent that the Court will dismiss this case without prejudice for lack of subject matter jurisdiction.

## IV.    Conclusion

Because McCarthy has not identified a waiver of sovereign immunity that applies to his claims, the Court does not have subject matter jurisdiction over this action.  Therefore, the Court will grant the Secretary's Motion and dismiss the case without prejudice for lack of jurisdiction.  Accordingly, it is

**ORDERED:**

1. Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 110) is **GRANTED, in part**, and **DENIED, in part**.

   A.   The Motion is **GRANTED** to the extent that this action is **DISMISSED without prejudice** for lack of jurisdiction.

   B.   In all other respects, the Motion is **DENIED**.

---

[10]  In determining that the Court of Federal Claims provides an adequate remedy for McCarthy's challenge to the Secretary's actions, the Court states no opinion about whether McCarthy will ultimately succeed.  <u>See</u> <u>Mitchell</u>, 930 F.2d at 897 ("Most important, the question posed by APA Section 704 is whether the Claims Court offers adequate remedies, not whether Mitchell will be entitled to receive those remedies.").

2.      The Clerk of the Court is directed to terminate any pending motions

and deadlines and close the case.

**DONE AND ORDERED** in Jacksonville, Florida, on March 1, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record